[No. 21638-8-II.    Division Two.    September 4, 1998.]

CONSTANCE A. NEWELL, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

*Deborah J. Case* and *William B. Knowles*, for appellant.

*Christine O. Gregoire, Attorney General,* and *Gail C. Gray, Assistant,* for respondent.

MORGAN, J. — Constance Newell appeals the denial of her application for unemployment insurance benefits. We reverse and remand.

In 1990, Newell and her husband owned a home in Tacoma and property near Grapeview in Mason County. They resided in Tacoma. Their adult daughter also lived in Tacoma, at a separate residence.

On June 1, 1990, Newell went to work as a secretary for

the Federal Way School District. Each work day, she commuted from Tacoma to Federal Way and back.

Around 1991, Newell's husband retired from his job. He spent the next couple of years building a house on the Mason County property. The route from the new house to Federal Way was about 75 miles one-way and included the Narrows Bridge. The time needed to drive the route round-trip, according to Newell, was "3-5 [hours] depending on a good or bad day on the Narrows Bridge."[1]

In December 1994, Newell and her husband sold their Tacoma home and moved to the new house in Mason County. While Newell continued to work in Federal Way, she stayed at her daughter's house in Tacoma during the week and at the new house in Mason County on the weekends. In March 1995, the daughter moved to Spokane, and Newell began commuting between Mason County and Federal Way.

Meanwhile, in October 1994, the District restructured its clerical staff and downgraded Newell from a Secretary III ($13.29 per hour) to a Secretary II ($11.75 per hour). Newell filed a union grievance, which she and the District settled in April 1995. The District paid her $1,570, which represented back pay as a Secretary III from October 1, 1994 to April 1, 1995, and promised to pay her as a Secretary III until June 30, 1995. In exchange, she agreed to resign, effective July 1, 1995.

On April 10, 1995, Newell notified the District that she was accelerating her resignation date from July 1, 1995 to April 27, 1995. She stated in her letter of resignation:

> I had planned to finish the school year, but the daughter I spent the week with after our move has just recently moved to Spokane. I now live approximately 75 miles from the Federal Way area and do not wish to make this commute on a daily basis.[2]

On April 28, 1995, the day after her resignation was ef-

---

[1]Clerk's Papers at 75.

[2]*Id.* at 76.

fective, Newell applied for unemployment. When asked for the main reason her employment had terminated, she stated:

> The commuting distance. I used to be able to stay in Tacoma with my daughter . . . . However in March she moved to Spokane [and] I no longer had a place to stay during the work week. I wished also to resume a life with my husband.[3]

She went on to explain:

> My husband retired 4 years ago. We were living in a house in Northeast Tacoma that was affordable when we had two full incomes. After it became apparent to him that it was not feasible for us to continue living there on his retirement income, he moved us to a home he built . . . on property we owned in Mason County. In November 1994, he seized the opportunity to sell the Tacoma home without going through a real estate agent and moved us to Mason County in December 1994.
>
> Although my husband does not formally work any longer, his pension is his income. We have been married 35+ years and I wished the relationship to continue. It was not feasible to live apart 5 days a week to avoid a miserable, time-consuming commute which would take 3-5 [hours] depending on a good or bad day on the Narrows Bridge.[4]

On May 8, 1995, the Employment Security Department determined that Newell was disqualified from receiving benefits, pursuant to RCW 50.20.050(1), because she had voluntarily quit her job without good cause. As far as we can tell from the record, the Department failed to consider whether Newell was entitled to benefits pursuant to RCW 50.20.050(4), hereafter called the "marital exception." Ambiguously, it found that Newell's reason for quitting was "personal, not work related; or was marital/domestic."[5]

Newell contested the Department's determinations. At a

[3]*Id.* at 74.

[4]*Id.* at 75.

[5]*Id.* at 67.

hearing on June 27, 1995, the administrative law judge (ALJ) admitted exhibits containing all of Newell's statements quoted above. He also heard live testimony from Newell and the District's Human Resources Director. The next day, having considered all the evidence, he ruled in writing:

> [T]his tribunal will not find that the claimant resigned her position based upon a substantial and involuntary deterioration in her working conditions. Rather, it appears that the claimant's resignation was the result of the change in her domestic circumstances. Accordingly, the claimant shall be subject to disqualification, but under the provisions of the limited, ten-week period of disqualification provided for in subsection (4) of RCW 50.20.050.[6]

The District appealed the ALJ's application of the marital exception, RCW 50.20.050(4), to the Department's Commissioner. The Commissioner's designee held that Newell had quit voluntarily for personal reasons, and that she was disqualified under RCW 50.20.050(1). The designee also held that "[a]t no time during the hearing, did [Newell] attribute her resignation to the need or requirement or desire to resume daily residence with her husband;" thus, "there [was] no evidence [Newell] quit for marital or domestic reasons," and the marital exception, RCW 50.20.050(4), did not apply.[7] The effect was to reinstate the Department's determination.

Newell appealed the Commissioner's decision to the Mason County Superior Court. That court affirmed, and the present appeal followed.

Although Washington pays unemployment insurance benefits under some circumstances, RCW 50.20.050 provides in part:

> (1) An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she

[6]*Id.* at 83.

[7]*Id.* at 101.

has left work voluntarily without good cause and thereafter for five calendar weeks and until he or she has obtained bona fide work and earned wages equal to five times his or her weekly benefit amount.

. . . .

(3) In determining under this section whether an individual has left work voluntarily without good cause, the commissioner shall only consider work-connected factors such as the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness for the work, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, including state and national emergencies. Good cause shall not be established for voluntarily leaving work because of its distance from an individual's residence where the distance was known to the individual at the time he or she accepted the employment and where, in the judgment of the department, the distance is customarily traveled by workers in the individual's job classification and labor market, nor because of any other significant work factor which was generally known and present at the time he or she accepted employment, unless the related circumstances have so changed as to amount to a substantial involuntary deterioration of the work factor or unless the commissioner determines that other related circumstances would work an unreasonable hardship on the individual were he or she required to continue in the employment.

(4) Subsections (1) and (3) of this section shall not apply to an individual whose marital status or domestic responsibilities cause him or her to leave employment. Such an individual shall not be eligible for unemployment insurance benefits beginning with the first day of the calendar week in which he or she left work and thereafter for five calendar weeks and until he or she has requalified, either by obtaining bona fide work and earning wages equal to five times his or her weekly benefit amount or by reporting in person to the department during ten different calendar weeks and certifying on each occasion that he or she is ready, able, and willing to immediately accept any suitable work which may be offered, is actively seeking work pursuant to customary trade practices, and is utilizing such employment counseling and placement services as are available through the department. . . .

Subsection (4), the marital exception, applies when an employee quits due to "marital status or domestic responsibilities," regardless of whether the employee quits voluntarily.[8] In effect, it partially forgives the disqualification that would otherwise occur under RCW 50.20.050(1).

■ Newell makes two arguments on appeal. In the first, she claims that "[t]he Commissioner erred in failing to find that [Newell] had 'good cause' to quit her employment pursuant to RCW 50.20.050(3)."[9] She claims she had good cause "because her commuting distance increased to more than that customarily traveled by other workers in her job classification and labor market."[10]

We reject this argument. The evidence is undisputed that Newell voluntarily moved to Mason County because her husband had retired and moved there, and she wanted to be with him. This is a personal reason, not a work-connected one, and it cannot serve as "good cause" under RCW 50.20.050(1) and (3).[11]

■ In her second argument, Newell claims that the Commissioner erred by failing to find that she quit her job for marital or domestic reasons. As a result, she says, the Commissioner also erred by failing to apply the marital exception to full disqualification, RCW 50.20.050(4).

We accept this argument. The Commissioner's designee said that "[a]t no time during the hearing, did [Newell] attribute her resignation to the need or requirement or desire to resume daily residence with her husband," and thus that "there [was] no evidence [Newell] quit for marital or

[8]*Yamauchi v. Employment Sec. Dep't*, 96 Wn.2d 773, 776-78, 638 P.2d 1253 (1982).

[9]Br. of Appellant at 12.

[10]*Id.* at 13.

[11]Although Newell argues to the contrary, this conclusion is not altered by the fact that she obtained a temporary place to stay with her daughter in Tacoma, or by the fact that her daughter subsequently moved to Spokane. If the move to Mason County did not create "good cause" in the first place, it did not create "good cause" when the daughter left the area.

domestic reasons."[12] Both assertions are simply wrong. The record contains exhibits, admitted by the ALJ without objection from the District,[13] in which Newell said she was moving to Mason County because her husband had moved there and she wanted to be with him. The record contains nothing to the contrary, for the District was relying on Newell's statement as a basis for claiming that she had moved for personal reasons rather than work-connected ones. The evidence is virtually undisputed that Newell moved to Mason County to be with her husband and maintain her marital relationship, and that the commute from Mason County to Federal Way was impractical. As a consequence, we hold that the marital exception applies, and that Newell is entitled to whatever benefits it affords.

Reversed and remanded to the Department for further proceedings consistent herewith.

HOUGHTON, C.J., and BRIDGEWATER, J., concur.

---

[12]Clerk's Papers at 101. On appeal, the Department argues that "Newell's voluntarily increased commute rather than marital status or domestic responsibilities was the primary cause of [her] voluntarily leaving her job." Br. of Resp't at 25. This argument fails, for the record irrefutably shows that Newell moved to maintain her marital relationship, and that she would not have acquired the increased commute but for that fact.

[13]Clerk's Papers at 33, 74, 75.